IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:10CV4-1-V
5:05CR9-V

| | |
|---|---|
| ANTHONY BROWN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) **O R D E R** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| | ) |

**THIS MATTER** comes before the Court for an initial review of Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1), filed January 26, 2010.

**PROCEDURAL HISTORY**

On March 29, 2005, Petitioner was named in three counts of a twenty-nine count Superceding Bill of Indictment.[1] (Crim. Case No. 5:05cr9: Doc. No. 60.) Count One charged Petitioner with conspiracy to possess with intent to distribute at least 50 grams of cocaine base, 5 kilograms of cocaine, and 1000 kilograms of marijuana in violation of 21 U.S.C. § 846. Counts Twelve and Fourteen charged Petitioner with possession with intent to distribute a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841 and 2. On April 27, 2005, the Government filed an Amended Notice of Intention to Seek Enhanced Penalties Pursuant to 21 U.S.C. § 851. (Crim. Case No. 5:05cr9: Doc. No. 96.) On June 20, 2005, the parties filed a plea agreement with the Court. (Crim. Case No. 5:05cr9: Doc. No. 242.) On July 26, 2005, an

---

[1] On July 25, 2005, a Second Superceding Bill of Indictment was filed. (Crim. Case No. 5:05cr9: Doc. No. 265.) This filing did not impact the charges against Petitioner.

Inquiry into Status of Counsel hearing was held and new counsel was appointed for Petitioner. (Crim. Case No. 5:05cr9: Doc. No. 792.) On September 30, 2005, Petitioner entered a guilty plea at his Rule 11 hearing.[2] (Crim. Case No. 5:05cr9: Doc. Nos. 340, 1080.) On January 17, 2006, another Inquiry Into Status of Counsel hearing was held and again new counsel was appointed for Petitioner. (Crim. Case No. 5:05cr9: Doc. No. 793.)

On June 28, 2006, pursuant to a joint motion, the Court held a bond review hearing. (Crim. Case No. 5:05cr9: Doc. Nos. 564, 794.) At the conclusion of the hearing, the Court, despite reservations about Petitioner's criminal history, granted Petitioner bond in light of the Government's recommendation and in light of the fact that the ability to provide assistance to the Government was crucial to Petitioner. (Crim. Case No. 5:05cr9: Doc. No. 794 at 8.) At the end of the hearing the Court specifically warned Petitioner that it was imperative that he abide by the conditions that had been set. The Court reminded Petitioner that the consequences would be dire if he failed to do so. Petitioner indicated that he understood. (Crim. Case No. 5:05cr9: Doc. No. 794 at 9-10.)

On December 21, 2006, Probation filed a Violation Report setting forth that Petitioner had been arrested for possession of drug paraphernalia and failure to comply with his curfew on several dates. (Crim. Case No. 5:05cr9: Doc. No. 659.) On January 4, 2007, a bond revocation hearing was held. At the conclusion of the hearing, the Court, noting the relative minor nature of the violations, permitted Petitioner to stay out on bond. The Court informed Petitioner though that if he tested positive for any kind of drugs "all bets would be off." (Crim. Case No. 5:05cr9:

---

[2] Petitioner attempted to enter a guilty plea on at least two prior occasions but was too upset to do so. (Crim. Case No. 5:05cr9: Doc. No. 1080 at 11.)

Doc. No. 795 at 33.) On February 26, 2007, Probation filed another Violation Report setting forth that Petitioner had again violated the terms of his release. (Crim. Case No. 5:05cr9: Doc. No. 696.) An arrest warrant was issued and executed on March 22, 2007. (Crim. Case No. 5:05cr9: Doc. No. 722.)

On April 11, 2007, Petitioner appeared before this Court for sentencing. At sentencing, the Government declined to file a motion for downward departure in light of Petitioner's bond violations. This Court then sentenced Petitioner to the bottom of the advisory sentencing guideline range of 262 months imprisonment on Count One.[3] (Crim. Case No. 5:05cr9: Doc. No. 777.) Judgment was entered on April 19, 2007. (Crim. Case No. 5:05cr9: Doc. No. 743.)

After somewhat convoluted appellate proceedings, Petitioner's appellate counsel filed an Anders[4] brief asserting that there were no meritorious issues for appeal. Petitioner was informed of his right to file a pro se supplemental brief but he did not file one. On January 21, 2009, the Fourth Circuit, after reviewing the entire record, determined no meritorious issues for appeal existed and affirmed Petitioner's conviction and sentence. United States v. Brown, 308 Fed. App'x 711 (4th Cir. 2009). Petitioner then filed a petition for writ of certiorari which was denied.. Brown v. United States, 129 S. Ct. 432 (2009).

On January 26, 2010, Petitioner timely filed the instant Motion to Vacate. (Doc. No. 1.) In his Motion to Vacate Petitioner alleges that he received ineffective assistance of counsel from all three of his counsel.

---

[3] In accordance with the terms of the plea agreement, the Government dismissed Counts Twelve and Fourteen.

[4] Anders v. California, 386 U.S. 738 (1967).

# ANALYSIS

## I. INITIAL REVIEW AUTHORITY

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether a petitioner is entitled to any relief on the claims set forth therein. In the event it is determined that a petitioner is not entitled to relief, the reviewing Court must dismiss the motion.

Following such directive, this Court has reviewed Petitioner's Motion to Vacate and the pertinent record evidence. As hereafter explained, such review clearly establishes that Petitioner is not entitled to any relief on his claims.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Standard of Review

Petitioner's ineffective assistance of counsel claims are governed by the holding in Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In Strickland, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby, that is, there is a reasonable probability that but for the error, the outcome would have been different. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; Fields v. Attorney General of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1995). Petitioner bears the burden of proving Strickland prejudice. Fields, 956 F.2d at 1297. If the petitioner fails to meet this burden, a

"reviewing court need not consider the performance prong." Id. at 1290.

Moreover, a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet. Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). When a Petitioner challenges a conviction entered after a guilty plea, in order to establish the requisite prejudice, such a petitioner must show that "there is a reasonable probability that but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial." Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. ), cert. denied, 488 U.S. 843 (1988). Claims of ineffective assistance of counsel at sentencing after a guilty plea, however, require a petitioner to establish that a reasonable probability exists that absent the alleged error, the results of the proceeding would have been different. United States v. Mayfield, 320 Fed. App'x 190, 191 (4th Cir. 2009).

**B. Failure to Investigate Pre-Indictment Agreement**

Petitioner alleges that all three of his counsel were ineffective for failing to investigate the pre-indictment assistance and agreement that he made with the Government. Petitioner contends that all three counsel should have ensured that the benefits he had earned and been promised by the Government for his pre-indictment assistance were incorporated into the plea agreement.[5]

Petitioner's allegations are not supported by the record. Petitioner's plea agreement, which he obviously signed, does not contain any reference to promised leniency for pre-

---

[5] Petitioner appears to be under the impression that his counsel should have negotiated with the Government to have the Government relinquish its sole discretion with regard to whether his assistance was deemed substantial. Nothing in the record, however, supports a conclusion that the Government would have been willing to alter its standard policy in this regard. Moreover, the Government did not move for a downward departure motion because Petitioner's assistance was insubstantial but because he violated paragraph 24 of the plea agreement. (Crim. Case No. 5:05cr9: Doc. No. 777 at 10-11.)

indictment assistance. Significantly, Petitioner's plea agreement also sets forth that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement and none will be entered into unless executed in writing and signed by all parties. (Crim. Case No. 5:05cr9: Doc. No. 242 at ¶ 25.)

Petitioner's responses at his plea hearing further support the conclusion that no pre-indictment agreement existed. At his plea hearing, Petitioner swore under oath[6] that no one had made him any promises of leniency or a light sentence to get him to plead guilty. (Crim. Case No. 5:05cr9: Doc. No. 1080 at 19.) Petitioner also swore that no one had threatened, intimidated or forced him to enter into his guilty plea. (Crim. Case No. 5:05cr9: Doc. No. 1080 at 18.) Petitioner swore under oath that he understood that if his sentence was more severe than he expected, he would still be bound by his plea. (Crim. Case No. 5:05cr9: Doc. No. 1080 at 14.) Significantly, in reciting the terms of the plea agreement, the Government specifically noted the provision that it retained sole discretion as to whether his assistance had been substantial. (Crim. Case No. 5:05cr9: Doc. No. 1080 at 17.) Petitioner swore under oath that he understood that to be a term of his plea agreement. (Crim. Case No. 5:05cr9: Doc. No. 1080 at 18.) Indeed, at the plea hearing Petitioner's counsel stated that it had been reported to him that Petitioner had provided the Government with a lot of information. Petitioner's counsel also stated that he had explained to Petitioner that while there was a possibility that he could receive a sentence less

---

[6] In reaching a decision on this case the Court, in accordance with the law, has placed great weight on the Petitioner's representations at his Rule 11 Hearing. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)(representations made by a defendant at a plea hearing, as well as any findings made by the judge, constitute a formidable barrier in any subsequent collateral proceeding); see also United States v. DeFusco, 949 F.2d 114,119 (4th Cir. 1991)(statements made by a defendant during a Rule 11 proceeding constitute strong evidence of the voluntariness of the plea).

than the twenty year statutory minimum, he could not guarantee it and the Government cannot make promises. (Crim. Case No. 5:05cr9: Doc. No. 1080 at 10.) Most significantly, Petitioner also swore that the plea agreement represented all the agreements or understandings between the parties. (Crim. Case No. 5:05cr9: Doc. No. 1080 at 17-18.) When given an opportunity to ask any questions or make any statements, Petitioner thanked the Court for its patience with him – Petitioner did not raise the issue of an alleged pre-indictment agreement. (Crim. Case No. 5:05cr9: Doc. No. 1080 at 19.)

The contemporaneous record, and Petitioner's responses under oath, simply do not support a conclusion that the Government promised a particular benefit to Petitioner for his help prior to the indictment. Neither the specific language of the plea agreement or the exchanges at Petitioner's plea hearing support such a conclusion. Indeed, specific language in the plea agreement directly contradicts Petitioner's present allegation. As such, Petitioner's counsel were not ineffective for failing to incorporate the alleged promises into the record and Petitioner was not prejudiced by any failure to do so.

### C. Failure to Inform Petitioner About § 851 Notice

Petitioner also alleges that his first counsel was ineffective for failing to inform him prior to his entering the plea agreement about the § 851 notice and its impact on his mandatory minimum statutory sentence.

Even if Petitioner's first counsel did not inform him prior to signing his plea agreement of the filing of the § 851 notice and the consequences associated with it, at a minimum, Petitioner cannot establish that he was prejudiced. First, Petitioner himself states that prior to entering his plea at his Rule 11 hearing his first counsel informed him of the existence of the § 851 notice and
7

its implications. Moreover, at Petitioner's plea hearing, prior to Petitioner entering his guilty plea, Petitioner's second counsel specifically stated on the record "I explained to him that the § 851 is a more critical issue than the weight in this case." (Crim. Case No. 5:05cr9: Doc. No. 1080 at 8.) Thus, Petitioner was clearly aware of the notice and its consequences prior to entering his plea in court. Second, Petitioner does not contend that he did not have the prior felony drug conviction listed in the Amended § 851 Notice.[7] Nor has he produced any evidence establishing that it was not his conviction. As such, Petitioner cannot establish that he was prejudiced by a failure to challenge the prior conviction.

Nor can Petitioner establish that he was unaware of the increased statutory mandatory minimum associated with the § 851 Notice. At his plea hearing Petitioner swore under oath that he understood that the statutory mandatory minimum sentence for the crime to which he was pleading guilty was twenty years. (Crim. Case No. 5:05cr9: Doc. No. 1080 at 16-18.) Likewise, Petitioner's plea agreement specifically set forth that he faced a statutory mandatory minimum sentence of twenty years imprisonment. (Crim. Case No. 5:05cr9: Doc. No. 242 at ¶ 4.) Indeed, nowhere on the record, despite appearing before the Court numerous times, does Petitioner ever express surprise at the existence of the § 851 or raise this issue. Consequently, Petitioner cannot establish that he was unaware of the existence of the § 851 notice and the repercussions of it prior to entering his plea. Consequently, Petitioner's ineffective assistance of counsel claim on this basis fails.

---

[7] At his sentencing hearing Petitioner equivocally acknowledged the prior conviction. (Crim. Case No. 5:05cr9: Doc. No. 777 at 4-5.) The Government stated that the fingerprints of Petitioner matched the fingerprints of the individual convicted of the predicate offense listed in the Amended § 851 Notice.

**D. Failure to Move to Withdraw Plea**

Petitioner alleges that all three of his counsel were ineffective for failing to move to withdraw his guilty plea and make the Government's pre-indictment promise part of the record and the plea agreement.

First, Petitioner's pre-Indictment assistance to the Government was clearly part of the record. For example, at his July 26, 2005, Inquiry into Status of Counsel Hearing, Petitioner's first counsel stated "he has provided – in fact, had been providing cooperation prior to the indictment, and so pretty much he had – as I had gotten from the case agent and the government is that pretty much he's along the line of getting some substantial assistance." (Crim. Case No. 5:05cr9: Doc. No. 792 at 5.) At his plea hearing, Petitioner's second counsel stated "the benefits of going forward with the plea are there because of what he's already done. This has already been verified to me. His cooperation has been verified." (Crim. Case No. 5:05cr9: Doc. No. 1080 at 8.) His second counsel also stated at the plea hearing that while "there are no guarantees by the government, it has been reported to me that he has informed – done a tremendous amount." (Crim. Case No. 5:05cr9: Doc. No. 1080 at 10.) At his sentencing hearing, his third counsel argued strenuously against the Government's decision not to file a downward departure motion. His counsel argued that Petitioner "did provide substantial assistance as a factual matter. . . . Mr. Brown did very serious work for the Government. Mr. Brown informed on his co-defendants. Mr. Brown was prepared to testify. . . . And I just think it's a shame that everything he did for the Government is going to be wiped out by his bond violations . . . . So, I don't know if there's anything I can do about it, but I think the record needs to be complete . . . ." (Crim. Case No. 5:05cr9: Doc. No. 777 at 9-10.) Moreover, at sentencing the Court noted that it had a

9

letter it had received from Petitioner outlining his assistance and the Court commented that it appeared that "he did considerable work." (Crim. Case No. 5:05cr9: Doc. No. 777 at 10.)

Nothing in the record, however, supports a conclusion that the Government specifically promised Petitioner anything in return for his cooperation. Rather, as is typical in most cases where a defendant cooperates, the Government specifically retained the right to determine whether or not to make a downward departure motion. Nor is there anything in the record to support a conclusion that his counsel could have obtained such an agreement. To the contrary, the record reveals that Petitioner was told there were no guarantees. (Crim. Case No. 5:05cr9: Doc. No. 1080 at 10.)

Petitioner also alleges that his counsel were ineffective for failing to move to allow Petitioner to withdraw his plea agreement to allow his plea agreement to reflect the promises made to him by the Government.

Pursuant to Rule 11(d) of the Federal Rules of Criminal Procedure a defendant may withdraw a guilty plea after the court accepts the guilty plea but before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d). A defendant bears a heavy burden of demonstrating that withdrawal should be granted. United States v. Thompson-Rivier, 561 F.3d 345, 348 (4th Cir. 2009). In determining whether a defendant has met this burden, a court should consider several factors including: (1) whether the defendant has offered credible evidence that his plea was not knowing or voluntary; (2) whether the defendant has credibly asserted his legal innocence; (3) whether there has been a delay between entry of the plea and filing of the motion; (4) whether the defendant has had close assistance of counsel; (5) whether withdrawal will cause prejudice to the government; and (6)

whether withdrawal will inconvenience the court and waste judicial resources. United States v. Bowman, 348 F.3d 408, 414 (4th Cir. 2003); United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991).

In this circuit and elsewhere, courts have made clear that an evaluation of the plea colloquy is the central consideration on a motion to withdraw. See Bowman, 348 F.3d at 414 ("The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the plea was accepted.") (citing United States v. Wilson, 81 F.3d 1300, 1307 (4th Cir.1996)). This is so because "[t]he Rule 11 colloquy is designed to provide a structure to protect the defendant against making an uninformed and involuntary decision to plead guilty and to protect the public from an unjust judgment of guilty when a public trial has not been conducted." Bowman, 348 F.3d at 417. Of particular relevance here, the Fourth Circuit has noted that in order "to avoid dependence on pre-colloquy statements, agreements, advice, and misunderstandings, the court at the Rule 11 colloquy is required to review with the defendant de novo all of the material components of the guilty plea." Id. Given the importance of the plea colloquy, under most circumstances, "a properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn." Id. at 414.

As an initial matter, the Court notes that at Petitioner's properly conducted Rule 11 hearing, the Court suspended the hearing to allow Petitioner to reflect on whether he wanted to enter a guilty plea. (Crim. Case No. 5:05cr9: Doc. No. 1080 at 10-13.) After reflecting, Petitioner personally asserted, under oath, that he did, indeed, wish to plead guilty. (Crim. Case No. 5:05cr9: Doc. No. 1080 at 12-13.) Thus, despite being given the personal opportunity to do

so, Petitioner did not choose to decline to enter a guilty plea.

Moreover, a weighing of the above six factors leads the Court to conclude that it would not have granted a motion to withdraw the guilty plea if one had been filed. Petitioner has not offered credible evidence that his plea was not knowing and voluntary. Nor has Petitioner asserted a claim of legal innocence. In addition, the Court notes that Petitioner had the close assistance of counsel. Indeed, counsel clearly articulated on the record why a plea benefitted Petitioner. (Crim. Case No. 5:05cr9: Doc. No. 777 at 9-10.) Furthermore, withdrawal of the plea would have wasted judicial resources. Consequently, at a minimum, because this Court would not have granted a motion to withdraw, Petitioner's counsel were not ineffective for failing to file such a motion.

### E. Sentencing

Petitioner also alleges that his third counsel was ineffective at sentencing. More specifically, Petitioner alleges that his counsel was ineffective for failing to argue bad faith on the part of the Government with regard to the assistance he provided and for failing to argue the Government was contributorily negligent for Petitioner's drug relapse. In addition, Petitioner alleges that his counsel was ineffective for failing to investigate his post-plea substantial assistance. Finally, Petitioner alleges his third counsel was ineffective for failing at sentencing to argue that Petitioner was treated more severely because he was black.

Petitioner asserts that his counsel was ineffective at sentencing for failing to argue that the Government operated in bad faith by making promises to him that it knew it would not keep. As stated previously, the record does not support a conclusion that the Government made a promise to move to reduce his sentence. Moreover, it is apparent from the record that the

Government declined to make a downward departure motion based upon Petitioner's violation of the terms of his bond. (Crim. Case No. 5:05cr9: Doc. No. 777 at 10-11); see also (Crim. Case No. 5:05cr9: Doc. No. 795 at 22-23.) Petitioner's actions while out on bond violated paragraph 24 of his plea agreement which set forth that "defendant understands that if he breaches this Plea Agreement, or violates any federal, state, or local law, or any order of any court, including any condition of pre-trial, or pre-sentence, or post-sentence release, the United States will be relieved of its obligations under this Plea Agreement, but the defendant will not be allowed to withdraw his guilty plea." (Crim. Case No. 5:05cr9: Doc. No. 242 at ¶ 24.) Consequently, Petitioner's counsel had no basis for arguing bad faith and was not ineffective for that omission.[8]

Petitioner also argues that his counsel should have argued that the Government was contributorily negligent for his drug relapse while out on bond. First, counsel did raise the difficult position Petitioner was placed in when he was asked to continue to be around the drug scene. (Crim. Case No. 5:05cr9: Doc. No. 777 at 17-18.) Second, and more importantly, Petitioner must take responsibility for his desire to be placed in a situation that would enable him to provide additional substantial assistance. Indeed, Petitioner was well aware of the stakes as the following exchange illustrates:

> THE COURT: All right. Well, I guess this is self-evident. Mr. Brown if you get out and mess up, boy you're going to - -
> THE DEFENDANT: I'm going to pay deeply , sir.
> THE COURT – they're going to lock you up and throw away the key, man.
> THE DEFENDANT: Yes, sir.
> THE COURT: Do you understand that?
> THE DEFENDANT: Yes, sir.

---

[8] The Court notes that Petitioner's counsel did address at length the harshness of Petitioner's predicament. (Crim. Case No. 5:05cr9: Doc. No. 777 at 9-10.)

>. . .
> THE COURT: All right. Mr. Adolph, make sure he understands what the risks are.
> THE DEFENDANT: I understand.

(Crim. Case No. 5:05cr9: Doc. No. 794 at 9-10.) Furthermore, at his bond hearing his counsel stated that Petitioner was "aware there were pretty severe consequences if he messes up while he's out there, because she told me straight – she told me directly – and he's aware – there won't be any 5K . . . if he violates the conditions of the bond that we are all proposing." (Crim. Case No. 5:05cr9: Doc. No. 794 at 3.) At his Bond Revocation Hearing, Petitioner again indicated that he understood what was at stake. (Crim. Case No. 5:05cr9: Doc. No. 795 at 34.) In addition, the Court notes that after Petitioner's first few violations the Government sought to revoke his bond. (Crim. Case No. 5:05cr9: Doc. No. 795.) Even his counsel expressed his doubt as to the wisdom of opposing the bond revocation. (Crim. Case No. 5:05cr9: Doc. No. 795 at 10-11.) However, his counsel, in arguing strenuously for Petitioner, stated that "ultimately . . . [i]t's his life." (Crim. Case No. 5:05cr9: Doc. No. 795 at 25.) Finally, the Court notes that, at a minimum, Petitioner did not suffer any prejudice as this Court would not have granted any relief based upon a contributory negligence theory.

Petitioner also alleges that his counsel was ineffective at sentencing because he failed to investigate the fact that Petitioner was prosecuted more severely because of his race – black.[9] In support of this assertion, Petitioner states that the federal government declined to prosecute Tina and Rodney Pearce, white individuals who sold cocaine base to Petitioner a number of times as part of his cooperation while he was out on bond. Petitioner also asserts that these individuals

---

[9] Petitioner also alleges that the Government denied him a 5K motion because of his race. The record is clear that Petitioner's bond violations were the reason no 5K motion was filed.

received significantly smaller state sentences.[10] Petitioner's allegation fails to state a claim of race-based prosecution. Significantly, Petitioner makes no allegation that the Pearces were part of the overall conspiracy. The federal government's decision not to prosecute two individuals for selling illegal drugs is insignificant – the federal government often chooses not to pursue smaller matters. Petitioner has failed to allege that the Pearces were truly comparable to him. The lack of specific comparables combined with the very small sample size do not support a finding of racial animus. Indeed, the record reveals that at least two individuals – Brandon Lee Byrd and Melissa Annette Swaim – who were prosecuted in the conspiracy with Petitioner were white. As such, Petitioner has failed to establish that his counsel was ineffective for failing to investigate racial animus by the prosecution.

Petitioner also alleges that his third counsel was ineffective for failing to appeal based upon governmental bad faith, irrational basis, and unconstitutional motive. Petitioner's third counsel did not ultimately represent Petitioner on appeal and therefore cannot be ineffective for failing to raise certain issues. Consequently, Petitioner has not established that his third counsel's performance on this issue was deficient. Moreover, for reasons already set forth in this Order, Petitioner has not established that these claims have merit. As such, Petitioner was not prejudiced by a failure to raise these issues on appeal.

## CONCLUSION

The Court's initial review of the Petitioner's Motion to Vacate and the relevant record

---

[10] The fact that the Pearces received significantly lower sentences compared to Petitioner is not indicative of racial animus. Petitioner and the Pearces were prosecuted by different sovereigns. Moreover, it is typical for state drug sentences to be lower than federal sentences. In addition, Petitioner does not allege that their criminal histories were as extensive as his long criminal record.

evidence conclusively shows that Petitioner has failed to establish that he received ineffective assistance of counsel. Therefore, Rule 4(b) of the Rules Governing Section 2255 Proceedings requires this Court to <u>dismiss</u> the instant Motion to Vacate.

**THEREFORE, IT IS HEREBY ORDERED that:**

1. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) is **DISMISSED**; and

2. It is further ordered that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong)(citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).

Signed: February 17, 2010

Richard L. Voorhees
United States District Judge